### CLARK *v.* TODD *et al.*

*(Supreme Court, General Term, Third Department.* November 30, 1891.)

EXECUTORS—CLAIMS FOR SERVICES TO TESTATRIX—EVIDENCE.

> On a claim preferred against executors for services rendered their testatrix, the
> evidence as to the rendition of the services was conflicting. The witnesses for the
> claimant were her near relatives, and the testimony was such as to indicate that
> claimant was dissatisfied with the provision made for her in the will. No claim was
> ever made for such services until after testatrix's death, though they covered a
> period of four years; and during all that time claimant and her mother were occupy-
> ing, rent free, a house belonging to testatrix. *Held*, that the evidence was not suffi-
> cient to establish a case of contract, and the referee's report in favor of the execu-
> tors should be confirmed.

Appeal from special term, Albany county. Reversed.

Action by Anna J. Clark against Theodore W. Todd, Charles H. Todd, and
Norton Chase, as executors of the last will and testament of Matilda C. Perry.
The cause was referred, and the referee made a report in favor of the execu-
tors on the facts. The special term set this report aside, and ordered a new
trial, and the executors appeal.

Argued before LEARNED, P. J., and LANDON, J.

*Francis B. Delehanty,* for appellants. *John W. Mattice,* for respondent.

LEARNED, P. J. This is a claim against executors referred under the stat-
ute. Part of the claim, namely, $25, is for services rendered after the death
of the testatrix. Such a claim does not come within the provisions of 2 Rev.
St. marg. p. 88, §§ 34–36. It is a claim against the executors personally, and
not against the testatrix. *Tracy* v. *Frost,* (Sup.) 11 N. Y. Supp. 561; *Fer-
rin* v. *Myrick,* 40 N. Y. 315. The residue of the claim is for personal serv-
ices alleged to have been rendered by the claimant to the testatrix as a kind
of friendly servant or nurse from August 20, 1886, to June 1, 1890, the day
of the death of the testatrix, with three intervals, for which no charge is
made, respectively of about two months, three months, and ten months. The
claimant was not one of the household servants of the testatrix. There were
two such employed in the house. The testatrix was a widow, and had no
family. She was the second wife of her husband. His first wife was aunt
to the claimant. And the mother of the claimant lived free of rent in a house
which had belonged to the husband of the testatrix, and which, after his
death, belonged to the testatrix. The claimant lived with her mother, but
paid no board, and did not contribute to the support of the house. The house
is in the rear of the house of testatrix, three doors below. The testatrix, by
her will, gave $100 to the claimant, and $100 to her mother. The testimony
as to services rendered by claimant is given by her mother and by her aunt,
Mrs. Fuller. Mrs. Fuller states that the claimant said that she was happier

with Mrs. Perry, the testatrix, than with her mother, and that her mother's house smelled so badly that the testatrix thought it was bad for her. Mrs. Fuller testifies that the claimant dressed the testatrix's hair, and gave her hot baths, aided her to the carriage, and went on errands. The testimony of the mother is similar. Mrs. Fuller, however, says that she has often talked with the claimant about this claim; that she made a memorandum the night before giving the testimony; that the claimant came to her, and took care of her, in 1885 or 1886, for which she never paid her. She refuses to show the memorandum, and cannot state how many times she has seen the claimant bring meals and assist to the carriage. The two servants in the employ of testatrix testified. One of them was there all of the time in question; the other nearly all. Ellen Flynn says that the claimant came there two or three times a week, for an hour or two. That she never gave the testatrix a bath, or rubbed her, or did anything for her. Once she was seen to comb the hair of the testatrix. That she never sewed quilts. That she once or twice went on errands. Margaret Struthers, the other household servant, had never seen the claimant give the testatrix baths; had seen her combing the hair of testatrix several times, and rubbing her a dozen times; had seen her make comfortables, and assist the testatrix in undressing, and in getting up and out of her chair. Mary H. King testifies that she knew the testatrix intimately; called two or three times a week; had seen the claimant come in the back way, go up-stairs, inquire of testatrix how she was, stay a few minutes, and go away; that the only thing she ever saw claimant do was to rub testatrix, who suffered with rheumatism. Upon the testimony, of which a partial abstract has been given above, the referee decided in favor of the defendants as a matter of fact. The learned court at special term set aside the report, and ordered a new trial, and the defendants appeal.

The testimony on behalf of the claimant comes from her near relatives; and certain expressions appear, showing that there is, as often in such cases, a disappointment as to the testamentary disposition of her estate by the testatrix. The mother of the claimant says she herself took care of the testatrix, and got no pay; that she supposed she was to have the house. And the claimant said she was sorry she had rubbed the testatrix, etc., because the testatrix had not remembered her. Now, these expressions show that the kind acts of the claimant and of her mother were done in the hope that their rich friend would be induced to give them a bequest or legacy. These acts, therefore, were gratuitous. The mother and her daughter were living, free of rent, in the house belonging to the testatrix, and these acts of the claimant were but the suitable return for the home which the testatrix was thus affording them. In view, then, of these facts, it seems to have been a proper case in which the referee should weigh the testimony, and decide thereon. As the witnesses for the claimant were her near relatives, he might take that circumstance into account, and might give less faith to their statements than to those of the defendants' witnesses, who seem to be disinterested. In cases like this the question must be, was there any mutual understanding between the parties that the services were to be paid for? Such services are sometimes performed for friendship's sake, sometimes to obtain the favor of the recipient, sometimes on a plain understanding that payment shall be made. Unless they come within the last class, no debt is contracted. The friendly acts and kindnesses of near neighbors and connections, however frequently repeated, create no liability on which an action can be maintained. But it sometimes happens that dissatisfaction with the will of the deceased induces the kind neighbor to try to get pay for services which were rendered with a better motive. Courts should not permit this. And it is easy to understand the truth of the case. Of course we are to inquire as to the understanding of the parties at the time the services were rendered. When services are rendered and accepted with no thought at the time of compensation, it will not

do, after the death of the recipient, to set up a claim that the services were rendered for hire. A claim which the claimant would not have ventured to make during the recipient's life-time has no validity after her death. When it is mutually understood that such services are to be paid for, and the recipient is abundantly able to pay, it is not common to allow four years to pass without presenting a bill. In such case, too, the services will be uniform. If there is to be a payment, the recipient of the services will require that they be regularly performed, and that they be not at the caprice of the person who is to be paid. In the present case the claimant is not shown to have ever presented a claim until after the death of the testatrix, and, further, the so-called "services" seem to have been rendered just whenever she chose to come to the house of the testatrix, and to do these little favors, which might naturally have been done by any friend. This is plainly a case in which the claimant acted either in gratitude for the home which she and her mother enjoyed, or with the less worthy motive of ingratiating herself into the favor of the testatrix, and obtaining a larger legacy than she in fact received. It is not a case of contract. The claimant's counsel cites the case of *Smith* v. *Railroad Co.*, 102 N. Y. 192, 6 N. E. Rep. 397. That was very different from the present. The railroad company had elected the plaintiff secretary. His predecessor had been paid a salary. The services were not nominal, and the referee found that he should recover their value. This the court of appeals affirmed. But here the claimant had no fixed employment in the house of the testatrix. Nor did she succeed to the position of one who had been paid wages. The referee, on hearing all the proof, found as a fact that she was not employed by the testatrix, and that she had rendered no services for which there was a liability to pay. It seems to us that this finding was correct, and that the report should be confirmed. Order reversed, and report confirmed, and judgment for defendants, with costs.